FALLON, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RY. CO., Respondent.

(No. 4,459.)

(Submitted September 21, 1921. Decided October 17, 1921.)

[200 Pac. 453.]

*Personal Injuries—Master and Servant—Employment of Minors — Complaint — Insufficiency — Amendment—When Denial Proper—Nonsuit.*

Personal Injuries — Master and Servant — Employment of Minor — Complaint—Insufficiency.

1. The complaint in an action by a minor against a railway company to recover damages for personal injuries under section 1746, Revised Codes, making it negligence *per se* for an employer to hire a child under sixteen years of age, must allege that defendant employed plaintiff knowing him to have been under that age.

Same—Complaint—Insufficiency—Amendment—Denial, When not Error.

2. Refusal to permit plaintiff to amend his complaint at the close of his case was not error where the contemplated amendment, if permitted, would not have rendered the pleading sufficient.

Same—Negligence—Complaint—Knowledge of Defect—Insufficiency.

3. Complaint charging negligence on the part of defendant railway company in permitting an apron iron, with its convex side upward, to lie between the tracks near its roundhouse and shops where plaintiff, a call-boy, stepped upon it in the dark, causing him to fall and be injured, *held* insufficient for failure to allege when defendant actually learned, or had opportunity to learn, of its presence at the place of the accident.

Same—Evidence—Nonsuit—When Proper.

4. Testimony of plaintiff examined and *held* insufficient to make out a *prima facie* case of negligence.

*Appeal from District Court, Fergus County; Jack Briscoe, Judge.*

Action by Vern E. Fallon by Hugh M. Fallon, guardian, against the Chicago, Milwaukee & St. Paul Railway Company. From a judgment sustaining a motion for nonsuit, plaintiff appeals. Affirmed.

*Messrs. Cheadle & Cheadle*, for Appellant, submitted a brief; *Mr. E. K. Cheadle* argued the cause orally.

*Mr. Charles J. Marshall* and *Messrs. Murphy & Whitlock*, for Respondent, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

This action was brought by Hugh M. Fallon, guardian *ad litem* of Vern E. Fallon, to recover damages for personal injuries received by the latter while acting as a call-boy in the roundhouse and shops of the defendant in the city of Lewistown. The allegations of the complaint are that Vern E. Fallon entered the service of the defendant about fifteen days prior to the date of the accident; that he received his injuries about 11:30 P. M. of July 3, 1920, between tracks Nos. 11 and 12 while on his way to another building where he habitually ate lunch; that the "apron iron" over which he stumbled and fell had been negligently left between the tracks by the defendant and its employees and was "negligently and carelessly allowed to remain in an improper and unusual place, and was in a wet and slippery condition, with the convex side of the apron iron upward, so that the plaintiff stumbled and fell thereover, and was injured by the carelessness and negligence of the defendant and its employees"; that the place where the "apron iron" was at the time of the accident was left in darkness by the negligence and carelessness of the defendant, so that plaintiff could not, and did not, see it until he fell upon and over it and was injured.

The answer puts in issue all the allegations of negligence. After the plaintiff had finished his case, and rested, defendant interposed a motion for a nonsuit upon the ground that the plaintiff had failed to prove negligence as the complaint charged. The motion was sustained, and the judgment appealed from was rendered and entered.

Appellant charges that in its rulings the court committed [1, 2] three errors. The second and third specifications only need be considered on this appeal. The second error is predicated upon the refusal of the trial court to permit the plaintiff to amend his complaint at the close of his case, so as to charge the defendant with negligence as a matter of law, in employing the boy while he was under the age of sixteen years. Section 1746 of the Revised Codes makes it negligence *per se* only when a child under sixteen years of age is *knowingly* employed. This allegation, indispensably necessary to charge a violation of the provisions of the section referred to, is absent from the complaint and was not supplied by the proffered amendment. Under rules of pleadings now too well established to be doubted, the district court was justified in ruling as it did.

The third assignment of error is predicated upon the granting [3] of the nonsuit because the plaintiff had not made out a *prima facie* case of negligence. The averments of the complaint merely charge that the plaintiff stumbled and fell over the apron iron by reason of its position between the two tracks in a dimly lighted portion of the roundhouse, with the convex side up and in a slippery condition. Assuming the averments of the complaint to be true, it is nevertheless defective in failing to set forth the time the defendant actually learned of its presence there or had an opportunity so to do. (*Boyle* v. *Chicago, M. & St. P. Ry. Co.*, 60 Mont. 453, 199 Pac. 283; *Martin* v. *Northern Pac. Ry. Co.*, 51 Mont. 31, 149 Pac. 89.)

Whether the order granting the nonsuit can be upheld will [4] be settled by a reading of the following epitome of the plaintiff's evidence: Vern E. Fallon's duties were to call the engine crews, machinists, helpers, and others to their work under the direction of the night hostler. At about 11:30 on the evening of July 3, 1916, as he turned to go through a door leading from the roundhouse to the boiler-room to eat lunch, he stumbled and fell upon an apron iron lying between

two tracks nearest the door and distant a little more than the width of one set of tracks. The engine pit into which he fell was thirty-two inches deep, as wide as the space between the rails, and lined with concrete. He slipped before he stepped upon the apron, his momentum carrying him against the opposite rail and into the pit. There was an engine over the pit next to the one into which he fell, deflecting the light so that it did not show directly on to the apron iron. His account is as follows: "Letcher Gibbs was a boy that was with me that evening. He and I had been together before I started to the boiler-room, and he went back to get his coat and my light that I had left behind me. While he was gone the accident occurred. He was going to the boiler-room with me. * * * I frequently passed through the roundhouse during the fifteen days I had been working there, and had never seen any apron iron lying between the tracks; it was about six feet long, and convex, twenty inches wide, and had little knobs punched up through it, so that the firemen's feet would not slip when they walked across it. I judge it was within six inches of the edge of the pit and parallel with the rails. The convex surface was slippery. There was no engine on the first track inside the roundhouse that night. There was either an engine or a snowplow on the second track. The night was dark, cloudy and rainy." On cross-examination he testified: "The office proper was commonly locked. The telephone was in there. The outer office contained some chairs and a stove. I stayed there the greater part of my time. Between the tracks there is a concrete flooring which is a little convex, for the purpose of allowing the water to run off. There is a cement walk along the side of the building. Between each of the tracks there is a convex space up and down, upon which the employees can walk. * * * I have seen the machinists take pieces off from the engines and lay them down beside the engines and work on them. They usually lay

the things in between the tracks. * * * It is not un-
common to see articles used in connection with the engines
lying between the tracks, beside the engines. I was walk-
ing fast, not running. * * * It was pretty dark. I don't
believe I could have seen the apron iron if I had looked down,
unless I had known it was there. * * * I don't know how
many lights there are in that roundhouse; the lights between
tracks 11 and 12, if there were any, were not lighted. * * *
I saw some kind of a washing-machine standing out there
in the space between tracks 11 and 12. The rain was blow-
ing through the door. I slipped on the wet pavement, stepped
on the apron iron, and fell over into the engine pit. * * *
There were several men working in the roundhouse at the
time of the accident, but I do not know just where. The
men generally used torches in their work, whether all the
lights were on or not. There were lights over the walk in
front of the engine pits. I started from the office, and walked
clear around the employees' walk, and then came down be-
tween tracks 11 and 12, and then started across where the ac-
cident occurred. I did not follow the extreme outer walk clear
around. I did not think the path outside would have been
the safest and quickest to follow, because there was a big
container out there that held compressed air. If it had not
been rainy and muddy, there would have been a safe way
outside the roundhouse straight to the boiler-house from the
office. There is a walk clear around the north end of the
roundhouse, and along the east side of the roundhouse, for
the use of its employees passing out of this door to the
boiler-house. I was not directed by any person to take any
particular route in passing through the roundhouse. I went
wherever I wanted to. There was a safe route by passing
around outside the building on the cinder path. The only
call I remember making that night was for a machinist. I
used my bicycle lamp in making it. The walks at the side
of the roundhouse were narrower than the space between the

tracks. I and the men working in the roundhouse used the spaces between the tracks regularly for going back and forth when we had occasion to. I did not ask the company to furnish me with a lantern, because the storekeeper was not at the roundhouse at night, and I had no chance to ask him. I used a torch, which I picked out, for a while, but it got to leaking and was not of any use. Generally the machinist and the boiler-makers had torches or lanterns; the lanterns were not used at the roundhouse. At the time I was injured my duties as a call-boy did not make it necessary that I should be at the place where I was hurt. I was not making a call at that time."

Joseph G. Sams testified that he was night hostler at the roundhouse when the accident happened; that the boy's duties were to call the engine crews, machinists, and anybody that was needed to work at night. The plaintiff had to call extra help, such as the machinists and helpers, and also engineers and firemen. The witness was not in the roundhouse at the time of the accident. There are lights at the end of the roundhouse, which throw a reflection down on the walk. There are side lights along the sides of the roundhouse. They are put there for the purpose of giving light to the mechanics and employees of the defendant. The lights are not sufficient for a mechanic to work on an engine; the mechanics usually placed the parts taken off the engines in the space between the tracks or by the sides of the engines. If it is dark, one is likely to run into any of the parts or appliances that are lying between the tracks, if there are any, and suffer injury. If an apron iron were taken off from an engine, it would probably be left there a length of time, according to what work there was to do on the engine and how long it would take. The parts taken off the engine would be removed when the engine was finished. It was not customary to leave parts on the floor any longer than it took to make repairs on the engine. It was customary for the employees to go between the

tracks, if they wanted to pass out of this door. The space between track 11 and the outer wall is much narrower than the space between the tracks.

This is substantially all the evidence upon the points necessary to the disposal of this appeal. There is no substantial evidence to sustain the charge that the place at which the accident happened was negligently left in darkness. Nor was there any suggestion in the testimony of the boy that he had no reason to expect to encounter the apron iron as he did. Assuming every fact to be proved that the evidence tends to show, it is not shown that the defendant knew the apron iron was in that particular place, from whence it came, the circumstances under which it came to be there, the length of time it was actually permitted to remain there, nor that it was not there in the course of the ordinary repair operations in the roundhouse.

The judgment is therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS and HOLLOWAY concur.